# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CP-01402-SCT

### CONSOLIDATED WITH

### NO. 2000-CP-01403

*JIMMY DOCK*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/2000 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | HON. BILBO MITCHELL |
| NATURE OF THE CASE: | CIVIL - POST CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 10/18/2001 |
| MOTION FOR REHEARING FILED: | 11/15/2001; denied 1/10/2002 |
| MANDATE ISSUED: | 1/17/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Jimmy Dock was sentenced in the Lauderdale County Circuit Court on June 30, 1997, to serve two concurrent twenty-year sentences for sale of cocaine. On June 23, 2000, he filed his first request for post-conviction relief which was dismissed by the trial court. It is from that dismissal that Dock brings this appeal, raising the following issues which have been edited for clarity:

**I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT POST-CONVICTION RELIEF WHERE THE COURT DID NOT PERSONALLY ADVISE DOCK OF EACH OF HIS RIGHTS, ITEM BY ITEM.**

**II. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THAT DOCK'S GUILTY PLEA WAS INVOLUNTARY WHEN THE COURT FAILED TO ASCERTAIN WHETHER DOCK FULLY UNDERSTOOD HIS RIGHTS UNDER THE PLEA AGREEMENT.**

**III. WHETHER THE TRIAL COURT ERRED IN DISMISSING DOCK'S POST-CONVICTION MOTION AS FRIVOLOUS AND SANCTIONING DOCK WITH THE LOSS OF 60 DAYS OF EARNED TIME.**

¶2. Concluding that these issues[1] are without merit, we affirm the trial court's dismissal of Dock's motion for post-conviction relief and the imposition of sanctions.

## FACTS

¶3. In November of 1996 and again in January of 1997, Jimmy Dock made direct sales of crack cocaine for $1,160 to Mississippi Bureau of Narcotics agents. He was represented by retained counsel and ultimately chose to plead guilty rather than face trial. At the plea hearing, the circuit judge personally addressed Dock and methodically inquired into and determined the facts set forth in UCCCR 8.04 A4c. He did not, however, read item by item the list of rights which would be waived by Dock as a result of his guilty plea. Dock's retained attorney was present throughout the plea hearing and signed an affidavit stating that he had gone over the petition to enter guilty plea with Dock, paragraph by paragraph, and felt that Dock fully understood what he was doing by pleading guilty. The trial judge accepted Dock's open plea,[2] and ordered a pre-sentence investigation. At the conclusion of the sentencing hearing, Dock was sentenced to serve two concurrent twenty-year terms, to pay restitution of the $1,160, and fined the minimum fine of $10,000.

## ANALYSIS

**I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT POST-CONVICTION RELIEF WHERE THE COURT DID NOT PERSONALLY ADVISE DOCK OF EACH OF HIS RIGHTS, ITEM BY ITEM.**

**II. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND THAT DOCK'S GUILTY PLEA WAS INVOLUNTARY WHEN THE COURT FAILED TO ASCERTAIN WHETHER DOCK FULLY UNDERSTOOD HIS RIGHTS UNDER THE PLEA AGREEMENT.**

¶4. Issues I and II ultimately make the same point: that the circuit court erred by referring to the rights enumerated in paragraph 5 of the plea petition rather than actually reading each of those rights, item by item, and asking if Dock understood each of those rights.[3] Dock argues that this renders his guilty plea "null and void" pursuant to the U.S. Supreme Court's holding in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), as well as URCCC 8.04A4c, because the circuit court failed to establish that Dock's plea was voluntary.

¶5. In *Boykin*, an Alabama judge had accepted a guilty plea from a defendant charged with common law robbery without asking him any questions about whether he voluntarily waived his rights and without any statements made by defendant to the court. *Boykin*, 395 U.S. at 239. The U.S. Supreme Court reversed the conviction, concluding that it was error to accept a guilty plea on a silent record without any affirmative showing that it was intelligent and voluntary. *Id.* at 242.

¶6. *Boykin* is effectively codified in URCCC 8.04A4, which states:

*Advice to the Defendant*. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:

(a) That the accused is competent to understand the nature of the charge;

(b) That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law;

(c) That the accused understands that by pleading guilty (s)he waives his/her constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination; if the accused is not represented by an attorney, that (s)he is aware of his/her right to an attorney at every stage of the proceeding and that one will be appointed to represent him/her if (s)he is indigent.

URCCC 8.04A4.

¶7. Dock also relies upon *Nelson v. State*, 626 So.2d 121 (Miss. 1993). There, Nelson claimed that he pled guilty in part because the plea arrangement erroneously said that he might be subject to a $10,000 fine upon conviction by a jury, a penalty which was not in effect at the time of Nelson's arrest. *Id.* at 126. This Court remanded the case for an evidentiary hearing to determine whether Nelson's decision to plead guilty was based upon this inaccurate information. *Id.*

¶8. The case sub judice is clearly distinguishable from *Boykin* and *Nelson*. The record before this Court reflects the following exchanges from Dock's plea hearing:

Q. Okay. You have been indicted in both of these cases on a charge of sale of cocaine. Do you understand that if convicted of sale of cocaine, you could be sentenced to serve from 0 to 30 years with the Mississippi Department of Corrections and/or fined not less than $5000, no more than a million dollars? Do you understand that?

A. Yes, sir.

Q. And that's in each of your two cases.

A. Yes, sir.

Q. All right. Now, and it is your desire to plead guilty to the charge of sale of cocaine in both of these cases?

A. Yes, sir.

Q. All right. Have you told your attorney and discussed with your attorney the facts surrounding the charge that you are pleading guilty to; and by that I mean, have you told him what happened?

A. Yes, sir.

Q. All right. Have you discussed with your attorney any possible legal defenses to these charges that you might have, if you have any legal defenses?

A. Yes, sir.

Q. All right. Are you satisfied with the services rendered to you and on your behalf by your attorney?

A. Yes, sir.

Q. Do you feel like he has done all that any attorney could do in representing you and defending in your cases?

A. Yes, sir.

Q. Do you feel like anyone is putting any pressure on you to make you plead guilty this morning?

A. No, sir.

Q. All right. So if I understand what you are telling the Court, you are entering your pleas of guilty freely, voluntarily and knowingly with a full understanding of all matters that are set forth not only in your indictment, that charges you with sale of cocaine, but in these petitions to plead guilty; is that correct?

A. Yes, sir.

Q. Okay. Now, paragraph 5 of your petition set out certain constitutional rights or guarantees that you and every defendant in our judicial system are entitled to receive if you plead not guilty and you went to trial. But by pleading guilty this morning, you will be giving up each of these rights under paragraph 5, because you will not have a trial. Do you understand that?

A. Yes, sir.

Q. All right. Have you read paragraph 5 in its entirety?

A. Yes, sir.

Q. Have you gone over each of those rights with your attorney?

A. Yes, sir.

Q. Did he explain each of those rights to you and answer any questions that you might have had?

A. Yes, sir.

Q. All right. You have told me that you understand each of those rights. Do you still want to give up each of these rights and a trial and plead guilty this morning?

A. Yes, sir.

Q. And that's in both cases?

¶9. The record in this case is not silent as it was in *Boykin*, nor is there any basis for concluding that Dock's plea petition contained any prejudicial errors. Essentially, Dock's argument is that *Boykin* requires judges to expressly state each right and then inquire about the defendant's understanding of each of the rights enumerated, using the same language used by the *Boykin* Court. Dock cites no authority which supports this interpretation of *Boykin* or URCCC 8.04A4 . Although the better practice is for the trial judge to state each of these rights to the defendant during the plea colloquy, failure to do so is not reversible error. What is required is that a record be made affirmatively showing that the guilty plea was intelligently made and voluntary. Consequently, based on the record before us, there is ample basis for concluding that Dock's

guilty plea was neither void nor involuntary.

### III. WHETHER THE TRIAL COURT ERRED IN DISMISSING DOCK'S POST-CONVICTION MOTIONS AS FRIVOLOUS AND SANCTIONING DOCK WITH THE LOSS OF 60 DAYS OF EARNED TIME.

¶10. In denying Dock's motion for post-conviction relief, the circuit court deemed the motion frivolous and directed that Dock forfeit sixty days of earned time for the filing of a frivolous motion pursuant to Miss. Code Ann. § 47-5-138 (Supp. 2001). Dock now argues that the circuit court erred in deeming his motion frivolous, reasoning that a simple finding that a motion is without merit is not sufficient to find that the motion is frivolous within the meaning of § 47-5-138. The statute states in relevant part:

(3)(a) For the purposes of this subsection, "final order" means an order of a state or federal court that dismisses a lawsuit brought by an inmate while the inmate was in the custody of the Department of Corrections as frivolous, malicious or for failure to state a claim upon which relief could be granted.

(b) On receipt of a final order, the department shall forfeit:

(i) Sixty (60) days of an inmate's accrued earned time if the department has received one (1) final order as defined herein;

(ii) One hundred twenty (120) days of an inmate's accrued earned time if the department has received two (2) final orders as defined herein;

(iii) One hundred eighty (180) days of an inmate's accrued earned time if the department has received three (3) or more final orders as defined herein.

Miss. Code Ann. § 47-5-138 (Supp. 2001).

¶11. A trial court's conclusion that a motion is frivolous is reviewed for abuse of discretion. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999)("A district court may dismiss as frivolous the complaint of a prisoner proceeding *in forma paurperis* if it lacks an arguable basis in law or fact. . . . We review the dismissal of a frivolous complaint for abuse of discretion"). In determining whether a case brought in forma pauperis should be dismissed as frivolous, we have formulated a three-part test: (1) does the complaint have a realistic chance of success; (2) does it present an arguably sound basis in fact and law; and (3) can the complainant prove any set of facts that would warrant relief. *Evans v. State*, 725 So.2d 613, 677 (Miss. 1997). Sections 47-5-138(3)(a) and (b) are fully applicable against pro se litigants who seek post-conviction relief. *Retherford v. State*, 749 So.2d 269, 275 (Miss. Ct. App.1999)(affirming sanctions against pro se petition for post-conviction relief).

¶ 12. Dock's sole basis for reversal lies in his theory that reading paragraph 5, signing a statement admitting that he read paragraph 5, and answering questions about communications with his attorney regarding paragraph 5 are all somehow not good enough absent the trial court actually rereading paragraph 5 to him. We conclude that Dock's petition has no realistic chance of success, has no arguable basis in fact or law, and does not warrant relief. The trial court did not abuse its discretion in finding Dock's petition to be frivolous.

### CONCLUSION

¶13. We conclude that Dock's guilty plea was neither invalid nor involuntary, and the sanction of losing earned time credits pursuant to § 47-5-138 was not an abuse of discretion. The Lauderdale County Circuit Court's judgment dismissing Dock's motion for post-conviction relief is affirmed.

¶14. **AFFIRMED.**

> **PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER AND EASLEY, JJ., CONCUR. BANKS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J.**

> **BANKS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶15. I concur in the conclusion that the trial court should be affirmed on the merits. I disagree, however, with the imposition of sanctions in this case. In my view, Dock makes a reasonable argument based upon the precedents of the United States Supreme Court and this Court as well as our rules. While the majority reasons that he is entitled to no relief, neither the majority nor the State cites authority on all fours with Dock's claim, suggesting that he had no hope of success. The State does not even address his argument that sanctions are inappropriate.

¶16. Our rule, URCCC 8.04A4, applying the constitutional mandate of ***Boykin v. Alabama***, 395 U. S. 238, 89 S.Ct. 1709, 23 L. Ed. 2d 274 (1969) requires "the trial court to address the defendant personally and to inquire and determine" that the defendant waives certain enumerated constitutional rights. We have observed that a procedure addressing this requirement which was quite similar if not identical to that used in this case "*left much to be desired*. It is not enough to ask an accused whether counsel has explained his constitutional rights. Nor is a standardized petition to enter a plea sufficient standing alone. The court must go further and determine in a face-to-face exchange in open court that the accused knows and understands the rights to which he is entitled." ***Nelson v. State***, 626 So. 2d 121, 126 (Miss. 1993).

¶17. The majority describes ***Nelson*** as a case in which we reversed for the failure to adequately inform Nelson of the punishment that he faced. We did that, but it should also be noted that the failure to address constitutional rights face-to-face was also determined to require an evidentiary hearing in that case. ***Id.*** at 127. That was so because, there, the defendant raised an issue concerning the nature of the advice that he received from his attorney regarding the availability of compulsory process for out-of-state witnesses. Thus, there was a potential for demonstrable harm arising from the use of a reference to out-of-court proceedings as a substitute for the in-court inquiry.

¶18. I join with the majority in the instant case because Dock raises no such specific harm arising from the failure of the trial court to go further than the procedure upon which we frowned in ***Nelson***. In other words, there is no showing that the procedure utilized here failed in fact, as opposed to theory, to adequately inform Dock of his constitutional rights.

¶19. Nevertheless, the wording of the our rule, which is appropriate, and our admonition in ***Nelson***, is certainly enough in my view, to support a good faith argument that the trial court missed a necessary step in determining whether the plea in this case was both voluntarily and appropriately entered. Such an effort, in my view, precludes sanctions. Our Rules of Professional Conduct permit a lawyer to make "a good faith argument for an extension, modification or reversal of existing law." Miss. Rules of Prof'l Conduct R. 3.1. A

fortiori, it should not be deemed frivolous for a lay person to do so. *See also* Fed. R. Civ. P. 11(b) (2) (excepting from the definition of "frivolous" a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law); ***Bush v. Insurers Admin. Corp.***, 785 F. Supp. 595, 599 (S.D. Miss. 1991)(declining to impose sanctions under Fed. R. Civ. P. 11 and Litigation Accountability Act.).

¶20. I would reverse the order of the trial court with regard to sanctions.

   **DIAZ, J., JOINS THIS OPINION.**

1. Dock also submitted a reply brief suggesting another issue, that the circuit court dismissed his motion for post-conviction relief because of his race and/or religion. He makes only general allegations, stating that he was "regarded in the most lowest esteem because of the contour and pigmentation of his skin and the preference of his religious belief, belonging to the Islamic Faith" and that "each time that those of the similar sect listed (supra) should enter the places used for so called justice, the likely outcome is sure to be excessive, prejudicial and unfairly stereotypical." Dock points to no specific instances in which he was treated prejudicially or unfairly because of his race and/or religion. As this issue is first submitted in a reply brief, it is not properly before this Court. *See **Sanders v. State***, 678 So.2d 663, 669 Miss. 1996) (this Court will not consider issues raised for the first time in appellant's rebuttal brief).

2. Dock acknowledged that he understood that he faced the maximum combined sentences of 60 years in the penitentiary and fines of up to $2 million.

3. Paragraph 5 reads as follows:

   I understand that I may plead "NOT GUILTY" and may persist in that plea and the Constitution guarantees me:

   (a) the right to a speedy and public trial by jury,

   (b) the right to see, hear and cross examine all witnesses called to testify,

   (c) the right to use the power and process of the Court to compel the production of evidence, including the attendance of any witnesses in my favor,

   (d) the right to have the presence and assistance of a lawyer at all stages of the trial and any appeal,

   (e) the right to challenge the composition of the Grand Jury, which indicted me,

   (f) the right to testify in my own defense,

   (g) the right to a jury verdict of all twelve jurors before I could be found guilty.